IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DUCARMEL GERMAIN,

       Plaintiff,

                                     Civil No. 12-929 MV/LFG

    v.

CITY OF ALBUQUERQUE,
MAYOR RICHARD J. BERRY, in his official capacity
as Mayor of the City of Albuquerque,
ALBUQUERQUE POLICE DEPARTMENT,
CHIEF RAY SCHULTZ, in his official capacity as Chief of Police,
And OFFICER D.P. RITCHIE, individually and in his official capacity
as an employee of the City of Albuquerque,

       Defendants.


**MEMORANDUM OPINION AND ORDER**

     **THIS MATTER** comes before the Court on Defendants' Opposed Motion and Memorandum in Support for Summary Judgment Requesting Dismissal of Plaintiff's Complaint on Qualified Immunity Grounds [Doc. 47].   The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that Defendants' Motion is well-taken and will be granted.

**BACKGROUND**

     "The facts supported by evidence, [viewed] in the light most favorable to [Plaintiff]" as the party opposing the summary judgment, are as follows.   *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 662 (10th Cir. 2010).   On the afternoon of August 26, 2011, Plaintiff, a "dark-skinned individual of Haitian descent," was driving in Albuquerque, east on Ellison Boulevard near Cibola High School, in a black BMW sedan.   Doc. 1-1 (Complaint), ¶¶ 1, 9.   Plaintiff was driving his

daughter, Chandra Germain, to an interview at Chick-Fil-A.   Doc. 51, Ex. 2 (Affidavit of Chandra Germain) at ¶¶ 3-4.   The traffic traveling east was moderately heavy, and all vehicles were traveling at approximately the same rate of speed.   *Id.* at ¶ 6.   Plaintiff did not notice the race of the other drivers around him.   Doc. 47-1 (Transcript of Deposition of Plaintiff) at 66.

Plaintiff first noticed a police car behind him near a hospital, heading east.   *Id.* at 24-25. Plaintiff was in the left lane; the police car was in the right lane, at least two or three cars behind Plaintiff.   Doc. 47-1 at 25.   Plaintiff next noticed the police car, which was right behind him, as he was passing the high school.   *Id.* at 26.   At the time, Plaintiff was traveling 30 miles an hour, in a school zone where the posted speed limit was 25 miles an hour.   *Id.* at 26; Doc. 47-2 (Affidavit of David Ritchie) at ¶ 4.   The police officer engaged his lights, when he was behind Plaintiff, approximately 500 feet from the school crosswalk.   Doc. 47-1 at 28.   The police car never pulled up beside Plaintiff's car, and Plaintiff does not know whether the officer in the police car ever saw Plaintiff, or only saw his car.   *Id.* at 29.

After following Plaintiff for several blocks, the police officer, Albuquerque Police Officer David P. Richie, pulled Plaintiff over in the Chick-Fil-A parking lot, and advised him that he stopped him for driving over the speed limit.   Doc. 1-1 at ¶¶ 9-10.   Officer Ritchie asked Plaintiff for his driver's license and insurance, and took the documents back to his car.   Doc. 47-1 at 32. Officer Ritchie was not aggressive, and did not make any racial slurs to Plaintiff.   *Id.* at 34. Officer Ritchie then "ran" Plaintiff's information through the National Crime Information Center ("NCIC") database.   Doc. 47-2 at ¶ 6.   Officer Ritchie received indication that there was an active warrant for Plaintiff, and confirmed with dispatch that the warrant was active.   *Id.* at ¶ 7.

Another officer then arrived at the scene.   Doc. 47-1 at 35-36.   Officer Ritchie asked Plaintiff to step out of his car.   *Id.* at 36.   Once Plaintiff stepped out of the car, Officer Ritchie

2

informed him that there was an outstanding warrant for his arrest.   *Id.*   Plaintiff advised Officer

Ritchie that there was no outstanding warrant for his arrest; nonetheless, Officer Ritchie arrested

him, and Plaintiff was detained for over 20 hours, six of which he spent with his hands in handcuffs

behind his back.   Doc. 1-1 at ¶¶ 12-13.   Plaintiff posted bond and was released the following day.

*Id.* ¶ 14.   Bernalillo County Metropolitan Court records indicate that although a bench warrant for

Plaintiff's arrest was issued on July 29, 2009, the Court canceled the warrant on November 19,

2009, based on a finding that Plaintiff was not guilty.   *Id.* ¶ 16.

On September 4, 2012, Plaintiff filed a Complaint for Damages.   Plaintiff named as

Defendants the City of Albuquerque, Mayor Richard Barry "in his official capacity as Mayor of

the City of Albuquerque," the Albuquerque Police Department, Chief Ray Schultz, "in his official

capacity as Chief of Police," and Officer Ritchie, "individually and in his official capacity as an

employee of the City of Albuquerque."   *See* Doc. 1-1.   Thereafter, Plaintiff agreed to the

dismissal of Mayor Barry and the Albuquerque Police Department as Defendants in this action.

*See* Docs. 23, 24.

The Complaint includes six counts, apparently against all Defendants.   Counts I, II and V

allege federal constitutional violations, namely violations of the Fourth and Fourteenth

Amendment, based on unreasonable seizure and false imprisonment, and violation of the Fifth

Amendment, based on racial profiling; Counts III, IV, V, and VII allege, under the New Mexico

Tort Claims Act, violations of state law, namely false imprisonment and malicious abuse of

process.   Doc. 1-1, ¶¶ 18-54.

On November 15, 2012, Defendants filed a motion seeking dismissal of Plaintiff's claims

to the extent they are brought against Chief Schultz, in his official capacity, and against Officer

Ritchie, in his official capacity.   Doc. 21.   In a Memorandum Opinion and Order entered on

August 8, 2013, the Court granted the motion.   Doc. 52.

On June 21, 2013, Defendants filed the instant motion, seeking summary judgment on each

count of the Complaint, on the basis of qualified immunity.   Doc. 47.   Plaintiff filed a response in

opposition on July 29, 2013, Doc. 51; Defendants' reply followed on August 12, 2013.   Doc. 53.

## DISCUSSION

I.   Qualified Immunity Principles

Defendants seek summary judgment on the basis of qualified immunity as to Plaintiff's

Fifth Amendment claim of racial profiling and as to his Fourth Amendment and Fourteenth

Amendment claims of unlawful arrest and false imprisonment.   The affirmative defense of

qualified immunity arose to address the fact that, "[a]lthough actions for damages provide an

important remedy for individuals injured by governmental officials' abuse of authority, such

actions sometimes subject officials to costly and harassing litigation and potentially inhibit

officials in performing their official duties."   *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir.

2001).   To balance these competing interests, qualified immunity "protects all but the plainly

incompetent or those who knowingly violate the law."   *Id.* (citation omitted).   Qualified

immunity affords "broad protection, . . . giving officials a right, not merely to avoid standing trial,

but also to avoid the burdens of such pretrial matters as discovery."   *Id.*   (citation omitted).

Thus, "courts should resolve the purely legal question raised by a qualified immunity defense at

the earliest possible stage in litigation."   *Id.* (citation omitted).

In keeping with the purposes of qualified immunity, "special rules apply when an official

raises a defense of qualified immunity on summary judgment."   *Hinton v. City of Elwood, Kan.*,

997 F.2d 774, 779 (10th Cir. 1993).   Specifically, "qualified immunity requires a two-step

4

sequence."  *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. Feb. 27, 2012) (citation omitted).

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the

plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional

right was clearly established."  *Id.* (citation omitted).   "If the plaintiff fails to satisfy either part of

the two-part inquiry, the court must grant the defendant qualified immunity."  *Gross*, 245 F.3d at

1156.   The Court has "the freedom to decide 'which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the particular case at hand.'"

*Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555

U.S. 223 (2009)).   Although the Court views the evidence in the light most favorable to the

nonmoving party, "the record must clearly demonstrate the plaintiff has satisfied his heavy

two-part burden; otherwise, the defendants are entitled to qualified immunity."  *Gross*, 245 F.3d

at 1156.

"A constitutional right is clearly established when, at the time of the alleged violation, the

contours of the right were sufficiently clear that a reasonable official would understand that [her]

actions violate that right."  *Lundstrom*, 616 F.3d at 1118-19 (citation omitted).   "This inquiry

must be undertaken in light of the specific context of the case, not as a broad general proposition."

*Fisher v. City of Las Cruces*, 584 F.3d 888, 900 (10th Cir. 2009) (citation omitted).   Accordingly,

a "plaintiff must do more than identify in the abstract a clearly established right and allege that the

defendant has violated it."  *Lundstrom*, 616 F.3d at 1119.   Specifically, a "plaintiff must show

legal authority making it apparent that in light of pre-existing law a reasonable official would have

known that the conduct in question violated the constitutional right at issue."  *Id.*

II.   <u>Plaintiffs' Fifth Amendment Claim</u>

In Count VI of the Complaint, Plaintiff alleges that Defendants deprived him of his Fifth Amendment right to equal protection of the laws by targeting him for search and seizure, based solely on his race and ethnicity, and without legal justification. Doc. 1-1 at ¶¶ 45-48.   Defendants argue that they are entitled to summary judgment based on qualified immunity on Plaintiff's equal protection claim, because Plaintiff fails to meet the high standard of proof necessary to establish a selective enforcement claim.

"The Constitution prohibits selective enforcement of the law based on considerations such as race." *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1263 (10th Cir. 2006) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)).   Accordingly, "claims asserting selective enforcement of a law on the basis of race are properly brought under the Equal Protection Clause, and [] the right to equal protection may be violated even if the actions of the police are acceptable under the Fourth Amendment." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1167 (10th Cir. 2003).   The law is clear, however, that because "[b]road discretion has been vested in executive branch officials to determine when to prosecute, and by analogy, when to conduct a traffic stop or initiate an arrest," the standard of proof in a selective enforcement claim is a "demanding" one.   *Id.* at 1167.

A plaintiff making a selective enforcement claim must establish two elements:   the defendants' actions had a discriminatory effect and they were motivated by a discriminatory purpose.   *Id.* at 1168.   "To withstand a motion for summary judgment, a plaintiff in a § 1983 suit challenging alleged racial discrimination in traffic stops and arrests must present evidence from which a jury could reasonably infer that the law enforcement officials involved were motivated by a discriminatory purpose and their actions had a discriminatory effect." *Id.*

6

To establish discriminatory effect, a claimant must show "that a similarly situated individual of another race could have been, but was not, stopped or arrested for the offense for which the defendant was stopped or arrested." *Alcaraz-Arellano*, 441 F.3d at 1264.   To establish discriminatory purpose, a plaintiff must show "that discriminatory intent was a motivating factor in the decision to enforce the criminal law against the [plaintiff]." *Id*.   In turn, "[d]iscriminatory intent can be shown by either direct or circumstantial evidence." *Id.*   For example, a plaintiff can use "statistical comparisons between the number of black or other minority Americans stopped or arrested and their percentage in some measure of the relevant population." *Marshall*, 345 F.3d at 1168.   The use of statistics "requires a reliable measure of the demographics of the relevant population, a means of telling whether the data represent similarly situated individuals, and a point of comparison to the actual incidence of crime among racial or ethnic segments of the population." *Id.*   In the alternative, a plaintiff can seek to prove the racially selective nature of his stop and arrest by means of direct evidence of the arresting officer's behavior during the events in question, the officer's own statements and testimony, and the officer's alleged record of racially selective stops and arrests under similar circumstances. *Id.*

Here, Plaintiff argues that the reasonable inference from the undisputed facts is that Officer Ritchie "singled Plaintiff out due to his race, in the context of his driving an expensive vehicle." Doc. 51 at 9.   In support of this argument, Plaintiff notes that he was driving at the same rate of speed as the other traffic, and that Officer Ritchie "was so unconcerned with the proffered basis for the stop that he never even ticketed Plaintiff." *Id.*   Further, Plaintiff cites to the United States Census Bureau's estimation that only 3.3% of the population in Albuquerque are African-Americans, and contends that "by force of logic, a mere 1.7% of the population are African American males," "even fewer are of driving age," and "this Court can take judicial notice

7

that at most half of these driving age African American males are likely to drive expensive vehicles." *Id.*   According to Plaintiff, "[t]he percentage of African American males driving an expensive vehicle in Albuquerque traffic is likely less than 1% at any given time." *Id.*   From this premise, Plaintiff concludes that "the difference between Plaintiff and the other drivers, who were also traveling at five miles over the speed limit, was most likely Plaintiff's race and his expensive vehicle." *Id.*

Plaintiff's argument is insufficient to meet the demanding standard of proof on his selective enforcement claim.   First, Plaintiff fails to point to any evidence from which a jury could reasonably infer that Officer Ritchie's actions in stopping Plaintiff had a discriminatory effect. Indeed, there is no evidence in the record that a similarly situated individual of another race could have been, but was not, stopped for speeding under the circumstances in which Plaintiff was stopped.

Second, the unlikelihood that an African American male will be driving an expensive car through the streets of Albuquerque is alone insufficient to create a reasonable inference that Officer Ritchie was motivated by a discriminatory purpose in stopping Plaintiff.   Plaintiff has presented no evidence that Officer Ritchie ascertained Plaintiff's race before initiating the stop, displayed any racial bias during the stop, or has a past record of making racially selective stops and arrests.   Similarly, while Plaintiff cites to census estimates of the percentage of African Americans in the Albuquerque population, Plaintiff fails to take the crucial next step of presenting statistical comparisons between the number of African Americans stopped or arrested and their percentage in the Albuquerque population.   Plaintiff's citation to census estimates thus provides no useful point of comparison from which to create an inference of discriminatory intent by Officer Ritchie in stopping Plaintiff for speeding.   Even taking into account the facts that Plaintiff

was traveling at the same rate of speed as the other drivers around him and that Officer Ritchie did

not ultimately issue him a citation for speeding, the evidence presented by Plaintiff is insufficient

to create a reasonable inference of discriminatory intent.   For these reasons, Plaintiff cannot

withstand Defendants' motion for summary judgment on his equal protection claim.

III.     Plaintiff's Fourth Amendment Claims

     In Counts I and II of the Complaint, Plaintiff alleges that Defendants deprived him of his

Fourth and Fourteenth Amendment rights to be free from unreasonable seizure and false

imprisonment by arresting him on the basis of an alleged NCIC hit, which falsely indicated that an

arrest for Plaintiff was outstanding, without taking any steps to verify the information received

from NCIC.   Doc. 1-1 at ¶¶ 18-27.   Defendants argue that they are entitled to summary judgment

based on qualified immunity on both claims, because Plaintiff has failed to carry his burden of

showing that Officer Ritchie stopped him without reasonable suspicion, or arrested him without

probable cause.

     A.     Unreasonable Seizure

     The Fourth Amendment to the United States Constitution protects "[t]he right of the people

to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures."   U.S. Const., Amend, IV.   In the instant case, Officer Ritchie first stopped Plaintiff,

and subsequently arrested him without a warrant.   The Court must consider the constitutionality

of both the stop and the arrest.

     1.     Initial Stop

     Under the Fourth Amendment, a traffic stop constitutes a seizure and thus must be

reasonable.   *United States v. Flores-Olmos*, 438 F. App'x 713, 2011 WL 4059044, **1 (10th

Cir.), *cert. denied*, 132 S. Ct. 565 (2011).   A stop is reasonable if it is based on an observed traffic

violation or a reasonable articulable suspicion that such a violation has occurred or is occurring. *Id.* Here, the undisputed facts establish that Officer Ritchie observed Plaintiff traveling over the speed limit in a school zone. Accordingly, the Court finds that it was reasonable for Officer Ritchie to stop Plaintiff.

2.   Arrest

The court "analyzes the constitutionality of a warrantless arrest under the probable cause standard." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). Accordingly, "[a] police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime." *Id.* "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* "Officers may rely on information furnished by other law enforcement officials to . . . develop probable cause for an arrest." *Ramirez v. City of Wichita*, 78 F.3d 597, 1996 WL 98807, *2 (10th Cir. 1996) (citation omitted). "When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff." *Romero*, 45 F.3d at 1476. "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Id.*

Here, Plaintiff argues that the NCIC hit was insufficient to establish probable cause for Officer Ritchie to arrest Plaintiff. In support of this argument, Plaintiff cites to the dissenting opinion in *United States v. Ellison* , 462 F.3d 557 (6th Cir. 2007), which in turn cites to the dissenting opinion of Supreme Court Justice Ginsburg in *Arizona v. Evans*, 514 U.S. 1 (1995), discussing the dangers of relying on NCIC information, which is available instantaneously and

ubiquitously, but is not always accurate.   Doc. 51 at 10-12.   Plaintiff further cites to the FBI's

own website, which states:   "a positive response from NCIC is not probable cause for an officer to

take action.   NCIC policy requires the inquiring agency to make contact with the entering agency

to verify the information is accurate and up-to-date."   *Id.* at 12-13.

Plaintiff, however, does not, and cannot, dispute that the Tenth Circuit has specifically held

that NCIC information, regardless of its accuracy, alone provides probable cause to arrest.   *See*

*Ramirez*, 1996 WL 98807, at * 3 (concluding that the information the police possessed from the

NCIC computer supplied adequate probable cause for plaintiff's arrest).   In *Miller v. City of*

*Nichols Hills Police Dep't*, 42 F. App'x 212, 2002 WL 1360387 (10th Cir. 2002), a police officer

arrested the plaintiff based on a faulty NCIC report, which indicated that plaintiff's vehicle was

stolen.   As does Plaintiff here, the plaintiff in *Miller* argued that it was not reasonable for the

officer to make the arrest "without further investigation into the dispatcher's report."   *Id.* at **3.

The Tenth Circuit disagreed, holding:   "The officers were entitled to rely on the reasonably

trustworthy information provided to them by the dispatcher, even though the information was later

determined to be faulty or inadequate."   *Id.* (citing *United States v. Hensley*, 469 U.S. 221, 231

(1985) (holding that police officers are entitled to rely on the reasonable information relayed to

them from a police bulletin); *United States v. Mounts*, 248 F.3d 712, 715 (7th Cir. 2001) (holding

officers are entitled to rely on reasonable information relayed from police dispatcher and it is

immaterial that dispatcher's information is later determined to be faulty or inadequate)).   The

Tenth Circuit in *Miller* held that, "[i]n particular, it was objectively reasonable for the officers to

rely on the dispatcher's NCIC report of a stolen vehicle report matching the tag on Ms. Miller's

vehicle."   *Id.* (citing *United States v. Shareef*, 100 F.3d 1491, 1505-06 (10th Cir. 1996)

(upholding as reasonable officer's reliance on dispatcher's mistaken report of NCIC match, and

rejecting argument officer should have conducted further investigation prior to stop)).

Here, the NCIC report received by Officer Ritchie indicated that there was an outstanding warrant for Plaintiff's arrest, and confirmed with his dispatcher that the warrant was active.   The NCIC report, as relayed to Officer Ritchie by the dispatcher, "was sufficient to provide probable cause for the arrest."   *Id.* (citing *Duckett v. City of Cedar Park*, 950 F.2d 272, 280 (5th Cir. 1992) (holding that an NCIC computer printout is sufficient to establish probable cause for an arrest); *United States v. Roper*, 702 F.2d 984, 989 (11th Cir. 1983) (finding probable cause to arrest where officer radioed NCIC and learned of warrant); *United States v. Hines*, 564 F.2d 925, 927 (10th Cir. 1977) (noting that information from NCIC computer bank "has been routinely accepted in establishing probable cause for a valid arrest")).   Thus, as the Tenth Circuit found in *Miller*, the Court finds that the undisputed facts establish that Officer Ritchie had probable cause to make the warrantless arrest of Plaintiff.[1]   Defendants thus are entitled to qualified immunity on Plaintiff's unreasonable seizure claim.   *See Romero*, 45 F.3d at 1476.

B.     <u>False Arrest</u>

"To maintain a false imprisonment claim under § 1983, a plaintiff must demonstrate the elements of a common law claim and show that his Fourth Amendment right to be free from unreasonable search and seizure has been violated."   *Hinton v. Martin*, 242 F.3d 388, 2000 WL

---

[1]  It is unclear from the record whether, in keeping with NCIC policy, Officer Ritchie made contact with the agency that had entered the warrant for Plaintiff's arrest in order to verify that the information was accurate and up-to-date, or whether he merely confirmed the information with NCIC itself (which was not the "entering agency").   This distinction is irrelevant for purposes of the instant motion, as the case law is clear that reliance on an NCIC report, without any verification at all, is sufficient to establish probable cause to arrest.   The Court is nonetheless quite troubled that law enforcement would not adopt the policy clearly set forth by the FBI for the proper use of its own information.   As the instant case makes clear, the NCIC system is not error-free.   To prevent warrantless arrests based on inaccurate information, the Court would hope that the Albuquerque Police Department, if it has not already done so, would adopt the FBI's own policy for use of the NCIC system, and make it mandatory for officers such as Officer Ritchie to verify with the *entering agency* the accuracy of information received through NCIC before effecting a warrantless arrest.

1846195, *3 (10th Cir. 2000).   Under New Mexico law, a claim for false imprisonment cannot stand if there was probable cause to arrest.   *Jackson v. N.M. Pub. Defender's Office*, 361 F. App'x 958, 2010 WL 227569, **5 (10th Cir. 2010).   As discussed above, the Court has found that Officer Ritchie had probable cause to arrest Plaintiff.   Therefore, Plaintiff's claim for false imprisonment must be dismissed.

IV.   State Law Claims

Counts III, IV, V and VII of the Complaint assert state law claims alleging under the New Mexico Tort Claims Act false imprisonment and malicious abuse of process.   Doc. 1-1, ¶¶ 28-44, 49-54.   As set forth above, the Court has decided to dismiss the federal claims alleged in the Complaint.   Having thus dismissed all of the federal claims in this action, this Court is authorized to dismiss the state claims as well.   *Bateman v. City of West Bountiful*, 89 F.3d 704, 709 (10th Cir. 1996).

Specifically, the Court has discretion to decline to exercise jurisdiction where, as here, it has dismissed "all claims over which it has original jurisdiction."   28 U.S.C. § 1367(c)(3).   "The Supreme Court has instructed that 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims.'"   *Merrifield v. Bd of County Comm'rs for Santa Fe*, 654 F.3d 1073, 1085 (10th Cir. 2011) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).   Further, the Tenth Circuit has "generally held that if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."   *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010).

13

Taking into consideration the relevant factors, and following Tenth Circuit precedent, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.   The interests of judicial economy, convenience, fairness and comity all weigh in favor of allowing the state court the opportunity to resolve those claims.   Accordingly, the Court will dismiss, without prejudice, Plaintiff's state law claims in their entirety.

## CONCLUSION

For the foregoing reasons, Defendants' Opposed Motion and Memorandum in Support for Summary Judgment Requesting Dismissal of Plaintiff's Complaint on Qualified Immunity Grounds [Doc. 47] is granted.


DATED this 30th day of January, 2014.

_____
MARTHA VAZQUEZ
United States District Court Judge

14